Pearson, J.
 

 In 1835, one Taylor filed a petition against the defendant, under the Act of 1809, to recover damages for injury done to his mill and premises, by the ponding back of water by the mill dam of the defendant, so as to obstruct the plaintiff’s wheel and otherwise injure his premises ; and in 1838 a verdict was returned in his favor, assessing the annual damages at the sum of $20, and a judgment was thereupon rendered
 
 for the
 
 sum of $20, annually for five years, commencing in August 1834. It was admitted that the defendant had satisfied this judgment, and paid the last instalment in August 1839,
 

 In 1841, Taylor sold his mill and land to the plaintiff, who commenced this action on the case in 1845.
 

 The defendant insisted, that the action could not be maintained, as Taylor had received the damages for the
 
 *107
 
 five years, and the plaintiff had not proceeded by petition to ascertain the annual amount of damage done to him.
 

 His Honor decided that the action could be maintained.
 

 It is clear that the plaintiff, as assignee, “stands in the shoes” of Taylor, and is entitled to his right to sue, so far as it is affected by the statute. “The right runs With the estate,” like certain covenants, which follow the estate as, incidents.
 

 The broad question, then, is presented : can the owner of land, injured by the erection of a mill, who has proceeded by petition, under which the annual damage assessed is as high as $20, and who has taken judgment for, and received the damage for, the whole five years, maintain an action on the case, brought after the expiration of the five years, without having again ascertained the annual damage by proceeding under a second petition?— We think, by a proper construction of the statute, he cannot.
 

 At common law, one whose land was injured to the smallest amount, had it in his power to issue a new writ every day, and was entitled to recover at least nominal damages in every one of his actions. This would carry-costs, and he could break down his adversary, not by the amount of damages, but by the amount of costs.
 

 The act of 1809 was passed to remedy this evil, in favor of persons erecting mills, and the
 
 controlling idea
 
 of that statute is, to prevent an action on the case from be • ing brought against the owner of a mill, unless it be first ascertained by the verdict of a jury, that the annual damage,
 
 during the time for which such action is to he brought,
 
 amounts to $20 at the least.
 

 To effect this purpose, the verdict is made binding for five years. If the annual damage is less than #20, the action cannot be brought. But if it is as high as $20, the action is allowed; and in that event, the verdict and
 
 *108
 
 judgment thereon are only binding for the year’s damage preceding the filing of the petition. So that, when the action is brought, it is for injury done during the four years, as to which it has been ascertained that the annual damage is as
 
 high
 
 as
 
 $20.
 

 But suppose, instead of taking one year’s damage and then bringing his action, the party receives the whole damage and brings his action after the expiration of the five years. He cannot declare for the injury done during the four years, because he has been satisfied for that. He. must therefore declare for the injury done afterwards— that is, during a time, as to which the verdict is not binding, and during which it is not ascertained, whether the annual damage amounts to more or less than $20, which would be a plain violation of the controlling idea of the statute.
 

 The correctness of this construction is confirmed by this additional consideration. When the action is brought, the statute contemplates that the plaintiff shall receive the annual damage for one year only. Now, if he receives the damage for the whole five years, he has, by his own act, made it impossible for this provision of the statute to take effect, and has no right, against the very words of the statute, to receive the damage for the whole five years, and bring his action also.
 

 As an argument against this construction, it was insisted for the plaintiff, that, if the proceedings, under the petition, pended for more than five years, as is not unfre-quently the case, the action could not be brought without another petition, which might also be protracted for more than five years, and so the action would be wholly defeated. There is more plausibility than force in this argument. For, consistently with this construction, the action can be brought after the expiration of the five years, supposing the proceedings to have pended that long, and the injury sued for is the damage done during the four
 
 *109
 
 years, as to which the annual damage has been ascertained. If the plaintiff is allowed to add the time from the expiration of the four years to the issuing of the writ, as to which the damage has not been ascertained, it is a departure from the principle of the statute, made necessary by the action of the Courts. But it is not such an absolute and total departure from it, as the plaintiff asks to be allowed to make, when he seeks to recover for a time, as to no part of which the damage has been ascertained in the manner required by the statute, and the necessity for which is the effect, not of the slow action of the Courts, but of his own act, in receiving satisfaction for the whole time.
 

 It is a
 
 condition precedent
 
 to the action, that the annual damage, during the time for which it is brought, shall be first ascertained to be as high as $20. This action is for damage between the years 1841 and 1845, and there is no telling whether the annual damage during this time was as much as $>20. Many changes may have taken place since the rendition of the verdict in 1838, and the fact has not been ascertained in the mode required by the statute. The plaintiff’s case is not within its words or its meaning. If he can maintain this action, he can maintain fifty more,-and break the defendant down with costs ; for there is no provision, that a non-suit shall be entered or that the plaintiff shall not recover costs, if it turns out on the trial, that the annual damage is less than $20. The protection, intended to be-given to the owners of mills, can only be secured to them by the construction we have adopted.
 

 The judgment of the Court below must be reversed and there must be a
 
 venire de
 
 novo.
 

 Per Curiam. Judgment reversed and
 
 venire de novo,